IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SANTOS RODRIGUEZ, # R-69474, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-036-NJR |
| | ) |
| MENARD CORRECTIONAL CENTER, | ) |
| RICHARD HARRINGTON, | ) |
| LT. TIMOTHY R. VEATH, | ) |
| LT. MIHN T. SCOTT, | ) |
| JASON N. HART, | ) |
| REBECCA A. COWAN, | ) |
| LORI OAKLEY, | ) |
| C/O PHELPS, | ) |
| C/O SCHOENBECK, | ) |
| C/O ANTHONY, | ) |
| and UNKNOWN PARTIES, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a 45-year sentence for murder and a lesser sentence for attempted murder. He claims that Defendants conspired to falsely find him guilty of two disciplinary charges and punish him with segregation, in retaliation for his Latino ethnicity and documented affiliation with a security threat group ("STG"). Both disciplinary actions were expunged as a result of Plaintiff's grievances.

In his complaint, Plaintiff states that on February 5, 2013, several inmates assaulted prison guards in Menard's chapel. These prisoners were affiliated with the same Latino STG with which Plaintiff is alleged to be associated. Plaintiff was in the law library at the time, which

is nowhere near the chapel.  Defendants Phelps and Schoenbeck interviewed Plaintiff during the investigation of the incident.  Plaintiff denied any involvement in the attack, but the officers suspected him, because one of the guards who was attacked had previously issued a disciplinary ticket against Plaintiff.  As a result of that earlier action, Plaintiff had been sent to segregation in another prison and had just recently returned to Menard (Doc. 1, p. 10).

As part of the investigation into the attack, all cells of inmates alleged to be documented members of a Latino STG were searched.  When Plaintiff's cell was searched, some gang-related pictures and other STG materials were found.  Both Plaintiff and his cellmate were issued tickets for possession of those items.

When Plaintiff appeared before the adjustment committee, made up of Defendants Veath, Scott, and Cowan, he was not allowed to see the items confiscated from his cell.  After the hearing, his cellmate told him that he had taken full responsibility for the STG-related material, but that Defendant Veath had said he knew the items belonged to Plaintiff.  Despite his cellmate's confession, Plaintiff was found guilty and given six months of punitive segregation.  The cellmate signed an affidavit admitting that the gang material was his, and Plaintiff filed a grievance over the disciplinary action.

On April 18, 2013, Plaintiff learned that the disciplinary ticket was expunged as a result of his grievance.  He was released back into general population after 71 days in segregation.  While he was in segregation, he had discovered that Defendant Cowan (investigator) knew that the gang material taken from his cell was connected to his cellmate's gang, not to the Latino STG with which Plaintiff had documented association, and that this information was known before Plaintiff's disciplinary hearing was conducted.  He concludes that Defendants Phelps, Schoenbeck, Veath, Scott, and Cowan conspired together to ignore this exonerating evidence in

order to find him guilty of the disciplinary infractions and send him to segregation. He alleges that they took this action to retaliate against him for his ethnicity and documented STG affiliation, and he claims they violated his equal protection and due process rights (Doc. 1, p. 14).

In Plaintiff's second claim, he states that on April 19, 2013, when he was released from segregation and placed back in his former cell house, the Unknown Party Defendant (John Doe #1) told him that they were "going to have to do something about" the fact that Plaintiff had beaten his ticket (Doc. 1, p. 15). John Doe #2 told Plaintiff that he would not beat the next one. Plaintiff was housed in cell number 321.

Over the next several weeks, his cell was shaken down four times, but nothing was found. On June 2, 2013, Officer Holkum searched Plaintiff's cell again, and other guards searched the neighboring two cells. When the search was done, Officer Holkum told Plaintiff that his cell was clean; he then left for the day. Not long afterward, Officers Edwards and Ransom (who had each searched a neighboring cell, but had not searched Plaintiff's) told Plaintiff and his cellmate that they were going to segregation, showing them a homemade knife that they claimed to have found in Plaintiff's cell.

Plaintiff was interviewed by Defendant Anthony, who told him, "I know you didn't think we were going to let you stay in population!" (Doc. 1, p. 17). Plaintiff said the knife was not his, and he requested a polygraph and fingerprint analysis. Defendant Anthony told Plaintiff he could take that up with the adjustment committee, and he "would not get out of this one." *Id*.

On June 4, 2013, the disciplinary ticket was heard by Defendants Veath, Hart, and Cowan. Plaintiff submitted a written statement and pleaded not guilty. Defendant Veath denied Plaintiff's request to have Officer Holkum testify regarding his search of the cell, and he also

denied the requests for a polygraph and fingerprinting. Defendant Veath commented that Plaintiff should make it easier on himself by pleading guilty, saying he "know[s] how much you Latinos like playing with shanks" (Doc. 1, p. 18). Plaintiff was found guilty and punished with one year in segregation as well as other sanctions.

On June 19, 2013, Plaintiff's cellmate told him that Defendant Anthony had offered to let him out of segregation if he would say that he knife belonged to Plaintiff. Defendant Anthony "knew" that the knife was Plaintiff's, and he said they were not going to let Plaintiff out of segregation this time (Doc. 1, p. 19). The next day, the cellmate was released from segregation, and his ticket was expunged. Plaintiff filed grievances over the handling of his disciplinary charges and punishment.

On August 21, 2013, Plaintiff was transferred to Pontiac Correctional Center ("Pontiac") to continue serving his disciplinary segregation. In September 2013, he was notified that Menard officials had denied his grievances. Over six months later, on April 14, 2014, he was informed that the Administrative Review Board had expunged the disciplinary ticket, because the charges were not substantiated (Doc. 1, p. 21; Doc. 1-2, p. 6). By that time, however, he had served 334 days in punitive segregation, most of it under the harsh conditions prevailing in Pontiac (Doc. 1-1, p. 1).

Plaintiff claims that he provided Defendants Veath, Hart, and Cowan with information that would have exonerated him of the disciplinary charges (the fact that the officers who "found" the knife had not actually searched his cell), yet they disregarded it. Instead, they conspired to find him guilty based on his Latino ethnicity and STG affiliation. Defendant Oakley neglected her duty to investigate when she denied his grievance.

Plaintiff's third claim is that Menard Defendants Veath, Hart, Cowan, Oakley, and

Harrington subjected him to cruel and unusual punishment and violated his rights to equal protection and due process, by causing him to be confined under harsh conditions in the segregation unit at Pontiac (Doc. 1-1, pp. 2-5). He was housed in a cell that was contaminated with puddles of urine and piles of toilet paper with fecal matter on the floor; the toilet leaked, and he was denied cleaning supplies. He spent nearly nine months in "isolated, highly restrictive segregation confinement" with mentally ill inmates who slung urine and feces on the gallery and smeared feces on the walls, subjecting Plaintiff to this stench in the poorly ventilated unit. He often suffered from lack of sleep due to these inmates screaming and banging on the steel doors at all hours. The shower areas were filthy. He was fed moldy bread and spoiled milk on a number of occasions, and the food portions were inadequate, causing him to lose weight. He was given only limited out-of-cell recreation and inadequate access to religious services, and a number of other privileges were curtailed due to the disciplinary action.

Plaintiff seeks declaratory, injunctive, and monetary relief.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following nine counts. (Counts 1-4 correspond to what Plaintiff designates in his complaint as "Claim I," Counts 5-8 correspond to Plaintiff's "Claim II," and Count 9 corresponds to Plaintiff's "Claim III.") The parties and the Court will use the designations below in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:** Defendants Phelps, Veath, Scott, Cowan, and Schoenbeck retaliated against Plaintiff for his STG association and his Latino ethnicity by bringing disciplinary charges against him in February 2013 for possession of gang-related material and punishing him with segregation;

**Count 2:** Defendants Phelps, Veath, Scott, Cowan, and Schoenbeck violated Plaintiff's right to equal protection by bringing disciplinary charges against him in February 2013 for possession of gang-related material and punishing him with segregation on account of his Latino ethnicity;

**Count 3:** Defendants Phelps, Veath, Scott, Cowan, and Schoenbeck deprived Plaintiff of a liberty interest without due process by bringing disciplinary charges against him in February 2013 for possession of gang-related material and punishing him with segregation despite knowing that the material belonged to his cellmate;

**Count 4:** Defendants Phelps, Veath, Scott, Cowan, and Schoenbeck conspired to deprive Plaintiff of his civil rights when they brought disciplinary charges against him in February 2013 for possession of gang-related material and punished him with segregation;

**Count 5:** Defendants Anthony, Hart, Oakley, Veath, Cowan, Harrington, and John Does #1 and #2 retaliated against Plaintiff for his STG association, his Latino ethnicity, and/or his successful grievance challenge to the February 2013 disciplinary action, by bringing false disciplinary charges against him in June 2013 for possession of a knife and punishing him with segregation;

**Count 6:** Defendants Anthony, Hart, Oakley, Veath, Cowan, Harrington, and John Does #1 and #2 violated Plaintiff's right to equal protection by bringing false disciplinary charges against him in June 2013 for possession of a knife and punishing him with segregation on account of his Latino ethnicity;

**Count 7:** Defendants Anthony, Hart, Oakley, Veath, Cowan, Harrington, and John Does #1 and #2 deprived Plaintiff of a liberty interest without due process by bringing false disciplinary charges against him in June 2013 for possession of a knife and punishing him with segregation under harsh and unsanitary conditions in Pontiac;

**Count 8:** Defendants Anthony, Hart, Oakley, Veath, Cowan, Harrington, and John Does #1 and #2 conspired to deprive Plaintiff of his civil rights when they brought false disciplinary charges against him in June 2013 for possession of a knife and punished him with segregation;

**Count 9:** Defendants Veath, Hart, Cowan, Oakley, and Harrington subjected Plaintiff to cruel and unusual punishment, because their violations of his rights to due process and equal protection caused him to be housed in Pontiac segregation

under harsh and unsanitary conditions.

Some of the claims in Counts 2, 4, 5, 6, 7, and 8 shall proceed for further review. However, Counts 1, 3, and 9 shall be dismissed, as discussed below, as will some of the Defendants.

**<u>Count 1 – Retaliation for STG Association and Latino Ethnicity – February 2013 Charges</u>**

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"). If the adverse action was taken in retaliation for the prisoner's exercise of a constitutionally protected right, then the prisoner may have a claim under § 1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.").

In the instant case, Plaintiff asserts that he was subjected to disciplinary action in retaliation for his association with a Latino STG. However, an inmate's affiliation with or leadership in a prison gang is not entitled to First Amendment protection. *Westefer v. Snyder*, 422 F.3d 570, 574-75 (7th Cir. 2005) (prison gangs are "a manifest threat to prison order" and prisoners do not have a First Amendment right to belong to a gang). Thus, Plaintiff cannot maintain a retaliation claim based on his STG association.

He also claims that the retaliation was based on his Latino ethnicity. One's race or ethnicity is an inherent characteristic and could be relevant to an equal protection claim. Ethnicity is not an "activity," however, and it is not constitutionally protected speech. Thus a

claim of unconstitutional retaliation is not appropriate in this context. For these reasons, **Count 1** for retaliation, based on Plaintiff's ethnicity and STG association, shall be dismissed with prejudice.

**Count 2 – Equal Protection – February 2013 Disciplinary Charges**

Racial discrimination by state actors violates the Equal Protection Clause of the Fourteenth Amendment unless it is narrowly tailored to serve a compelling state interest. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To state an equal protection claim, a plaintiff must establish that a state actor has purposely treated him differently than persons of a different race or ethnicity. *Id.* At this stage of the litigation, Plaintiff's claim that Defendants Phelps, Veath, Scott, Cowan, and Schoenbeck pursued the February 2013 disciplinary charges against him because he is Latino is not subject to dismissal under § 1915A. He has no equal protection claim, however, based on his documented STG affiliation, because membership in a gang is not a constitutionally protected class or activity.

**Count 2** shall proceed for further review.

**Count 3 – Deprivation of a Liberty Interest Without Due Process – February 2013 Charges**

Plaintiff asserts that the disciplinary proceedings initiated and conducted by Defendants Phelps, Veath, Scott, Cowan, and Schoenbeck did not comport with due process requirements because they knew, based on Defendant Cowan's investigation, that the gang-related materials in his cell were not associated with a Latino STG and instead belonged to his cellmate. Due process requires that the disciplinary decision be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). While this is a low threshold, exculpatory evidence, such as Plaintiff's cellmate's admission that the material was his, undermines the reliability of the evidence used to find Plaintiff guilty. *See Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Assuming for the sake of argument that the finding of guilt was not supported by "some evidence" and that Plaintiff was thus denied due process in the February 2013 disciplinary hearing, the Court must evaluate whether he was deprived of a liberty interest when he was placed in disciplinary segregation. Although Plaintiff was to be confined there for six months, he in fact was released after approximately 70 days, when the disciplinary ticket was expunged.

An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the

disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

In the instant case, Plaintiff is serving a 45-year sentence. In that context, 70 days in disciplinary segregation is minimal enough to extinguish any due process concerns. Under *Marion*, no further inquiry is needed into the conditions Plaintiff faced in disciplinary segregation between February 6 and April 18, 2013. In any case, his complaint does not allege that the conditions during this 70-day period in segregation were any more onerous than those he would have faced in administrative detention. Additionally, the fact that Plaintiff succeeded in having the disciplinary action expunged as a result of his grievance demonstrates that he received due process in the end.

For these reasons, Plaintiff has failed to state a claim upon which relief may be granted for a deprivation of liberty without due process. **Count 3** shall be dismissed with prejudice.

**Count 4 – Conspiracy – February 2013 Disciplinary Charges**

Civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under section 1983). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002). However, conspiracy is not an independent basis of liability in §1983 actions. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).

In this case, Plaintiff has alleged a conspiracy between Defendants Phelps, Veath, Scott, Cowan, and Schoenbeck to pursue disciplinary charges against him in February 2013 for possession of gang-related material. As noted above in the discussion of Count 2, the conspiracy may have violated Plaintiff's rights to equal protection. This portion of the conspiracy claim in **Count 4** may therefore proceed for further review. However, because Plaintiff has not stated viable constitutional claims for retaliation or a deprivation of liberty without due process (Counts 1 and 3), any conspiracy with respect to these issues would not amount to a constitutional violation. The retaliation and due process portions of the conspiracy claim are therefore dismissed.

### Count 5 – Retaliation – June 2013 Disciplinary Charges

As discussed in connection with Count 1, Plaintiff has no claim for retaliation based on any STG affiliation or his Latino ethnicity. The sequence of events and comments he describes, however, do suggest that some of the Defendants may have targeted Plaintiff with the false disciplinary charge for possession of the knife, after learning that he was successful in having the February 2013 disciplinary action expunged. *See Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (prisoner's complaint "set forth a chronology of events from which retaliatory animus on the part of defendants could arguably be inferred"). Plaintiff may thus proceed with this retaliation claim, based on his protected activity of pursuing a grievance, against Defendants Anthony, Hart, Veath, and Cowan. Each of these Defendants was directly involved in the investigation and adjudication of the June 2013 disciplinary charge, which was the adverse action allegedly taken in retaliation after Plaintiff "beat" the earlier ticket. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

But this claim shall be dismissed as to Defendants Oakley, Harrington, and the John Does

(#1 and #2). The John Doe Defendants made comments to Plaintiff in April 2013 regarding the fact he had beaten the February 2013 ticket. There is no indication, however, that they were involved in the cell search or other events in June 2013 that led to the second disciplinary charge. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under §1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (internal quotations and citations omitted). The facts as described by Plaintiff do not suggest that the John Doe Defendants were personally involved in the June 2013 disciplinary charges, so they will be dismissed from Count 5 without prejudice.

Similarly, neither Defendant Oakley nor Defendant Harrington was personally involved in bringing the June 2013 disciplinary action. Plaintiff includes Defendant Oakley because she reviewed his grievance over the matter after the fact and ruled that the discipline was properly imposed, denying him any relief. Such activity does not constitute "personal involvement" in a constitutional violation. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Thus, any failure to investigate Plaintiff's grievances, or any other action or inaction with regard to the grievance procedure on the part of Defendant Oakley, will not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli*, 81 F.3d at 1430.

It appears that Defendant Harrington's only role was to approve the denial of Plaintiff's

grievance, as well as to have approved the earlier disciplinary action recommended by the adjustment committee after they found Plaintiff guilty. Again, this administrative approval does not amount to "personal involvement" in the actions which may have violated Plaintiff's constitutional rights. Defendant Harrington also cannot be held liable for the misdeeds of others merely because he was the prison warden at the time. The doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).

For these reasons, Count 5 is dismissed with prejudice against Defendants Oakley and Harrington and dismissed without prejudice as to the Unknown Defendants (John Doe #1 and #2). **Count 5,** for retaliation based on Plaintiff's protected grievance activity, shall proceed only against Defendants Anthony, Hart, Veath, and Cowan.

**Count 6 – Equal Protection – June 2013 Disciplinary Charges**

Plaintiff asserts that Defendants brought false disciplinary charges against him for possessing the knife, because he is Latino. The discussion in Count 2 applies to this claim as well. Therefore, Plaintiff may proceed with this second equal protection claim.

As discussed in Count 5 above, however, this claim shall be dismissed as to Defendants Oakley, Harrington, and the John Does, who were not personally involved in bringing this disciplinary charge against Plaintiff. The dismissal of Defendants Oakley and Harrington shall be with prejudice; the dismissal of John Does #1 and #2 shall be without prejudice. **Count 6,** for denial of equal protection because of Plaintiff's Latino heritage, shall proceed for further review as to Defendants Anthony, Hart, Veath, and Cowan only.

**Count 7 – Deprivation of a Liberty Interest Without Due Process – June 2013 Charges**

As with Count 3, Plaintiff raises a due process claim over the false disciplinary charge in

June 2013 that he possessed a knife. During his hearing before Defendants Veath, Hart, and Cowan, his request for the committee to question a witness (Officer Holkum, who had said the cell was "clean" after his search) was denied. Defendant Anthony actively solicited false incriminating evidence against Plaintiff from his cellmate. These facts suggest that the hearing did not afford Plaintiff all of the due process protections outlined in *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (to satisfy due process concerns, inmate must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed). Further, the facts indicate that the finding of guilt was not supported by "some evidence." *See Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994); *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007). The complaint thus suggests that Plaintiff was denied due process during the adjudication of the June 2013 disciplinary charge.

In order to state a claim for the denial of a liberty interest without due process, however, as noted in Count 3, the Court must consider both the duration of Plaintiff's time in punitive segregation and the conditions of that confinement. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). The one-year period of segregation imposed on Plaintiff is of sufficient duration, under *Marion*, to trigger an inquiry into the conditions he endured there. Although Plaintiff's ticket was expunged as a result of his grievance challenge, Plaintiff was not released from segregation until after he had already served approximately 334 days of that one-year term. This length of time is likewise enough to prompt a review of the conditions of Plaintiff's segregation.

Plaintiff detailed several aspects of his confinement at Pontiac that could be considered "atypical and significant hardships" when compared to the ordinary conditions he would have

faced in non-punitive segregation. *See Sandin v. Conner*, 515 U.S. at 484; *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). Those included a cell contaminated with urine and fecal material, exposure to the smell of human excrement, lack of cleaning supplies, inadequate food portions, and spoiled food items. At this stage of the litigation, Plaintiff may proceed with this due process claim against Defendants Anthony, Hart, Veath, and Cowan, who were personally involved in bringing the disciplinary charge and conducting the hearing. It is unclear from the complaint whether any of these Defendants, or another Defendant, was responsible for Plaintiff's transfer to the disciplinary segregation unit at Pontiac. Therefore, the other Defendants named in connection with this count, Defendants Oakley, Harrington, and the Unknown Defendants (John Does #1 and #2), shall be dismissed from this claim without prejudice.

To summarize, **Count 7** shall proceed at this time only against Defendants Anthony, Hart, Veath, and Cowan.

### Count 8 – Conspiracy – June 2013 Disciplinary Charges

As discussed above in Count 4, Plaintiff may proceed with his conspiracy claim with respect to those counts where a constitutional violation may have occurred. As to the June 2013 disciplinary action, he has stated claims for retaliation, denial of equal protection, and deprivation of a liberty interest without due process, against Defendants Anthony, Hart, Veath, and Cowan (see Counts 5, 6, and 7 above). He thus may also proceed against these Defendants on the conspiracy claim. But the conspiracy claim shall be dismissed as to Defendants Oakley, Harrington, and the Unknown Defendants.

### Count 9 – Unconstitutional Conditions of Confinement in Pontiac Segregation

As noted above in Count 7, Plaintiff outlined a number of conditions in Pontiac that would support an Eighth Amendment claim for cruel and unusual punishment. And while he

may proceed with the due process claim in Count 7 against some Menard Defendants at this time, he may not hold them liable under a separate Eighth Amendment claim.

Plaintiff does not allege, nor is there any indication, that any of the named Defendants worked on the segregation wing where he was housed at Pontiac. Thus, they were not personally involved in maintaining or refusing to correct any of the allegedly unconstitutional conditions that prevailed there. *See Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). Instead, only the prison officials at Pontiac were in a position to respond to any complaints Plaintiff may have made regarding his cell conditions. If he brought those problems to the attention of Pontiac officials, who then failed to ameliorate the unsanitary or dangerous conditions, Plaintiff may have a viable Eighth Amendment deliberate indifference claim against those persons. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). Any such claim belongs in the Central District of Illinois, where Pontiac is situated. 28 U.S.C. § 93(c).

Accordingly, **Count 9** shall be dismissed as to each of the Defendants named herein, with prejudice. However, the dismissal of Count 9 shall be without prejudice to Plaintiff bringing his claim against the proper Defendants in the appropriate jurisdiction.

**Other Defendants**

Plaintiff named “Menard Correctional Center” as a Defendant in this action. This entity must be dismissed. The Menard Correctional Center, which is a division of the Illinois Department of Corrections, is not a “person” within the meaning of the Civil Rights Act and is not subject to a § 1983 suit. *See Will v. Mich. Dep’t of State Police*, 491 U.S. 58, 71 (1989).

Because Plaintiff is seeking injunctive relief, the Clerk shall be directed to add the current Warden of Menard as a party Defendant, in her official capacity only. No claim is stated against

the Warden personally in any of the surviving counts, and the Warden is included for the sole purpose of carrying out any injunctive relief to which Plaintiff might ultimately be entitled, should he prevail. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

**Disposition**

The Clerk is **DIRECTED** to add the **WARDEN OF MENARD** as a Defendant in this action, in her official capacity only.

**COUNTS 1 and 3** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNT 9** is also **DISMISSED** for failure to state a claim upon which relief may be granted. The dismissal of **COUNT 9** is with prejudice as to the Menard Defendants named herein, but is without prejudice to Plaintiff pursuing this claim in the proper jurisdiction against Pontiac officials.

Defendant **MENARD CORRECTIONAL CENTER** is **DISMISSED** from this action with prejudice. Defendants **HARRINGTON, OAKLEY,** and **UNKNOWN PARTY (John Does #1 and #2)** are **DISMISSED** from this action without prejudice. However, the claims in **COUNTS 5 and 6** against Defendants **OAKLEY** and **HARRINGTON** are dismissed with prejudice.

The Clerk of Court shall prepare for Defendants **VEATH, SCOTT, HART, COWAN, PHELPS, SHOENBECK, ANTHONY,** and **WARDEN OF MENARD**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a

Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 6, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**